IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRIS X,

    Plaintiff,

v.

YES CARE HEALTH,
ARRESAHEGN GETACHEN, M.D.,
WARDEN JEFF NINES,
CRISTINE (D.O.N.),
JOHN/JANE DOE SCHEDULER,

    Defendants.

Civil Action No.: BAH-23-2024

**MEMORANDUM OPINION**

Self-represented Plaintiff Chris X, an inmate at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, filed this civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that Defendants were deliberately indifferent to his medical needs and retaliated against him for filing grievances. ECF 1. Currently pending are Defendants YesCare Corp., Asresahegn Getachew, and Kristine Swick's (collectively the "Medical Defendants")[1] Motion to Dismiss or, Alternatively, for Summary Judgment (ECF 21) and Warden Jeff Nines' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF 25). Plaintiff opposed both Motions. ECF 28, 31. Also pending is Plaintiff's Motion to Appoint Counsel. ECF 29. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons stated below, Defendants' Motions are GRANTED and Plaintiff's Motion is DENIED.

---

[1] The Clerk will be directed to amend the docket to reflect the full and correct spelling of Defendants' names. Furthermore, the Clerk will be directed to add Defendant Christine (D.O.N.) who was inadvertently not added to the docket as a defendant when Plaintiff filed his Complaint. Counsel for Medical Defendants identified this individual as RN Kristine Swick, the Assistant Director of Nursing, and brings the pending motion on her behalf as well. ECF 21-1, at 1.

## I. BACKGROUND

### A. Factual Allegations

Plaintiff filed this case against YesCare Corp., RN Kristine Swick, Asresahegn Getachew, Warden Jeff Nines, and John/Jane Doe Scheduler. ECF 1, at 1. Plaintiff states that he injured his hand on or about December 21, 2022, after a fight with another inmate.[2] *Id.* at 6. As a result, Plaintiff was placed in disciplinary segregation. *Id.* at 7. "COII Atkins" took him to a property room to inventory Plaintiff's property, during which Plaintiff expressed that he believed he had an injury to his right hand because it was "extremely swollen and it hurt." *Id.*

Plaintiff was taken to the housing unit medical facility to see RN Jessica. ECF 1, at 7. RN Jessica wrapped Plaintiff's wrist, ordered ice, an x-ray, and pain medication, and referred him to a provider. *Id.* at 8. Plaintiff contends that both he RN Jessica "believed from initial evaluation that plaintiff suffered some form of fracture." *Id.* Despite this injury, Plaintiff asserts that he did not receive any pain medication despite his numerous requests. *Id.* "COII Broadwater" took Plaintiff for an x-ray on January 6, 2023. *Id.* Plaintiff asserts that the scheduler failed to timely schedule the x-ray. *Id.* Plaintiff alleges that did not receive needed medication until he saw a provider, PA Adane Negussie, on January 10, 2023, to discuss the x-ray results. *Id.* at 9–10. PA Negussie also rewrapped Plaintiff's hand. *Id.* at 10.

Plaintiff next alleges that on February 2, 2023, he was sent to an orthopedic clinic. *Id.* at 10. He alleges that new x-rays were taken and he was fitted with a new brace, which he asserts was less supportive than the wrap. *Id.* at 11. Plaintiff also complains that his medication lapsed

---

[2] Plaintiff also notes that he was originally placed "into the custody of the Maryland Division of Corrections, suffering from multiple [gun shot wounds], lower bladder incontinence, asthma, depression, audio psychosis, and mental health disorders on December 29, 2012." ECF 1, at 6. Plaintiff's complaint deals exclusively with the injuries sustained in December of 2022. *Id.* at 7.

and was only renewed upon intervention of his family and other inmates. *Id.* at 14–15. Plaintiff saw Dr. Getachew on or about February 10, 2023, via telemedicine, who ordered Plaintiff to see an on-site physician, Dr. Meta, for a physical because one could not be performed via telemedicine. *Id.* at 15.

While in disciplinary segregation, Plaintiff states that he was housed with a Maximum I inmate despite him being on Maximum II status, leaving him "vulnerable." ECF 1, at 11. Plaintiff wrote to the Warden asking him to intervene. *Id.* at 11–12. He also filed a grievance about a search of his cell on February 6, 2023, which he states was a result of a report from RN Swick that there was metal in his new hand brace. *Id.* at 12. According to Plaintiff, he was called out of his cell for a purported sick call but was then questioned by RN Swick, RN Anne, and numerous correctional officers as Plaintiff's cell, his cellmate's person, and his person were searched. *Id.* No contraband was discovered during this search. *Id.* During his time in segregation, Plaintiff suffered extreme discomfort due to lapses in medication and his financial inability to purchase any medication from commissary. *Id.* at 15–16.

Plaintiff further alleges that he was harassed and retaliated against due to persistent phone calls from his family and numerous grievances he filed regarding his cell mate and medical care. *Id.* at 16. Plaintiff claims that despite notifying prison officials of his condition through grievances and informal complaints, Defendants remained deliberately indifferent to Plaintiff's health and safety. *Id.* at 17. Plaintiff seeks declaratory relief and monetary damages. *Id.* at 18.

### B. Medical Defendants' Response

Medical Defendants submit declarations from Dr. Asresahegn Getachew, ECF 21-2, at 1–10, and RN Kristine Swick, Assistant Director of Nursing, ECF 21-17, at 1–5. Defendants also submit certified medical records memorializing Plaintiff's care. *See* ECF 21-3 through 21-17.

3

In relevant part, records reflect that on December 21, 2022, Plaintiff was seen by RN Ernest Massalla following an altercation and reported that his eyes were burning and he was having difficulty breathing. ECF 21-16, at 17.[3] On exam, his vitals were normal and Plaintiff proceeded to decontamination pursuant to post-pepper spray protocol. *Id.* at 18. Plaintiff returned on a sick call the following day, December 22, 2022, and "complained of [a] hand injury." Id. at 15. reporting that he believed he had hurt his hand but "but [he] was so worried about the mace [that he] couldn't tell that there was something wrong with [his] hand." *Id.* at 15. RN Jessica Coffman submitted a provider referral and ordered an x-ray of Plaintiff's hand. *Id.* RN Coffman wrapped his hand in a compression bandage and advised Plaintiff to ice his hand to alleviate the pain and swelling. *Id.*

On December 31, 2022, Plaintiff submitted a sick call on the belief that his hand was broken and inquiring about an x-ray. ECF 21-6, at 1. Plaintiff was sent a letter dated January 3, 2023, indicating that a scheduler was "verifying with x-ray" that Plaintiff was on the schedule for that week. ECF 21-16, at 14. An x-ray of his right hand was completed on January 6, 2023. ECF 21-6, at 3. The radiologist noted a mildly displaced proximal fifth metacarpal fracture. *Id.*

Dr. Getachew attests that "X-rays are usually performed within one week after they are ordered." ECF 21-2 at ¶ 7. He further noted that "[he did] not know why there was a 15-day wait for the patient to receive an x-ray in this case" because he "was not involved in the x-ray ordering or scheduling in this case." *Id.* RN Kristine Swick offered the following as it relate to the delay in receiving the X-ray:

> I have no control over scheduling x-rays or provider visits. I am personally aware that there is not a regular x-ray tech at NBCI. The x-ray tech travels to WCI, the facility adjacent to NBCI, two days per week to perform scheduled x-rays. A 15-day wait to receive an x-ray

---

[3] Citations refer to the pagination assigned by the Court's Case Management and Electronic Case File (CM/ECF) system.

> is not typical. I am personally aware that in this case, RN Jessica Coffman inadvertently did not enter the initial x-ray request correctly through the "Tasking" system in the computer on December 22, 2022 and as a result the x-ray tech was not made aware that an x-ray was requested until January 3, 2023, when the scheduler asked her if she had received the request. At that time, the x-ray tech informed the scheduler that she could perform the x-ray that day if custody was able to bring the patient from NBCI to WCI, but unfortunately custody was not able to bring him until January 6, 2023, when the x-ray was completed. The delay in the patient receiving an x-ray was due to an inadvertent error in entering information into the computer, and not an intentional delay.

ECF 21-17, at ¶ 6.[4]

Dr. Getachew further explains that a mildly displaced fracture does not require surgical intervention and is usually treated through stabilization with splinting, ice, rest, and over-the-counter pain medications. ECF 21-2, at ¶ 8. "Although there was an unusual delay," Dr. Getachew noted, "the delay did not affect the hand healing normally." *Id.*

Plaintiff submitted another sick call on January 8, 2023, requesting pain medication for his broken hand. ECF 21-6, at 5. He saw RN Swick the following day and she "[a]ssessed the hand/finger" and "used a size 3 finger splint and cohesive bandage to stabilize the fourth and fifth fingers together." ECF 21-16, at 13. RN Swick noted Plaintiff's hand was swollen and did not have an active range of motion. *Id.* To address Plaintiff's report of pain, she provided Tylenol because Plaintiff was on segregation and could not purchase it from commissary. *Id.*

The next day, Plaintiff saw PA-C Adane Negussie about his injured right hand and reported that the "[p]ain is unbearable and is sensitive to touch." ECF 21-16, at 6. Negussie prescribed Tylenol #3 with codeine twice a day through January 24, 2023, and submitted an urgent request

---

[4] Plaintiff states in his opposition that Defendant Jane/John Doe Scheduler was "the person(s) or person, who failed to place my order in the computer, which caused a major delay in my treatment" and asserts that based on Swick's declaration that this person is RN Jessica Coffman. ECF 28, at 2. Although Coffman has not been served, Plaintiff's claim against her will be dismissed for failure to state a claim for the reasons discussed below.

5

for Plaintiff to be evaluated by an orthopedic specialist. *Id.* at 4–5, 9. The consultation request was approved on January 11, 2023. *Id.* at 11.

RN Swick attests that she received calls from Plaintiff's father regarding his medical care; she states that she reviewed records each time to ensure that Plaintiff was receiving his medication. ECF 21-17, at ¶ 8. She further avers that during a call on January 12, 2023, she informed Plaintiff's father of the orthopedic consult and assured him that Plaintiff was receiving his medications as prescribed but that she had no control over the specific type of medication prescribed. *Id.*

During rounds on January 13, 2023, RN Janice Robinson "was stopped at [Plaintiff's] cell door by [Plaintiff] complaining of his hand." ECF 21-16, at 2–3. She examined his hand, noted that his exposed fingers were slightly swollen, and replaced the existing wrapping with an ace wrap. *Id.* at 3. Plaintiff was advised to keep his hand elevated to prevent swelling and to wiggle his fingers to promote circulation. *Id.*

On January 31, 2023, Plaintiff saw RN Annette Jennings for a sick call and was concerned that "Tylenol #3 was no longer effective" in relieving the pain in his hand. ECF 21-15, at 37. RN Jennings washed and rewrapped his hand and advised him to continue to elevate it. *Id.* Plaintiff received his Tylenol #3 from January 10, 2023, through February 6, 2023. ECF 21-10, at 9.

On February 2, 2023, Plaintiff saw orthopedist Dr. Rishi Bhatnagar to evaluate the pain in his hand. ECF 21-6, at 8–9. Plaintiff reported that the pain was getting worse and radiating up his arm, even after wearing a splint for five weeks. *Id.* at 8. On examination, Dr. Bhatnagar noted that Plaintiff had a limited range of motion and tenderness to the fifth digit. *Id.* Dr. Bhatnagar recommended activity modifications for Plaintiff, advised soaking his hand "in warm water with Epsom salts," working "on his range of motion," and wearing a wrist brace. *Id.* at 9. Plaintiff was

fitted for the brace and new x-rays were taken. *Id.* The x-rays showed an "[a]cceptable alignment of fracture fragments." *Id.*

RN Swick went to Plaintiff's housing unit on February 6, 2023 "for evaluation of [Plaintiff's] wrist brace." ECF 21-15, at 35. She noted that it was "intact with no metal" and told Plaintiff that he would receive education about range of motion exercises the following day. *Id.* at 36. RN Swick attests that she only went to assess Plaintiff's brace to ensure that the metal had been removed from it, "which is a serious security and potential medical issue." ECF 21-17, at ¶ 9. She determined that the brace was "intact with no metal." *Id.* She avers that at no time did she request that officers search Plaintiff's cell as "this order would have come from the Chief of Security." *Id.*

Dr. Getachew saw Plaintiff on February 10, 2023, via telemedicine with the assistance of Nurse Karen Coleman. ECF 21-15, at 25–27. He reviewed Dr. Bhatnagar's recommendations and Plaintiff reported again that the Tylenol had stopped being effective. *Id.* at 25. After initially prescribing Tylenol #3 again, Dr. Getachew decided to prescribe 50 mg of Tramadol twice a day for two weeks instead. *Id.* Plaintiff returned to medical on February 13 and 16, 2023, for Epsom salt soaks; he was also provided with Tylenol. *Id.* at 21, 23. On February 18, 2023, Plaintiff told RN Chaslynne Morton that he had already soaked his hand that morning but would not state which staff member had provided him with the supplies. *Id.* at 19. Plaintiff did not appear for an appointment on February 20, 2023, and was instead seen on February 21 and 22, 2023, for additional hand soaks. *Id.* at 14, 16, 18.

Plaintiff submitted a sick call on February 24, 2023, stating that he could not complete exercises because the pain was too severe and requesting a new x-ray. ECF 21-6, at 24. Dr. Joginder Mehta saw Plaintiff the same day; he prescribed Plaintiff 325 mg Tylenol three times a

7

day because Plaintiff's Tramadol prescription lapsed that day. ECF 21-15, at 9. Dr. Mehta tried unsuccessfully to contact Dr. Bhatnagar and instead referred Plaintiff to physical therapy and ordered that he continue to wear the wrist brace. *Id.* Via phone call, Dr. Bhatnagar recommended removing Plaintiff's brace, physical therapy, and Tylenol as needed. *Id.* at 6. Dr. Mehta submitted a consultation request for physical therapy on February 27, 2023, and Plaintiff had a hand soak appointment. *Id.* at 4–5, 7. Plaintiff had additional Epsom salt hand soaks on March 1, 4, 5, and 6, 2023. ECF 21-14, at 32–37; ECF 21-15, at 1–2. Stephen Ryan evaluated Plaintiff on March 9, 2023, and recommended eight physical therapy sessions. ECF 21-14, at 25.

Plaintiff did not want to be seen for his chronic care appointment and medication renewal on March 10, 2023. ECF 21-14, at 23. LPN Lori Keister rescheduled Plaintiff's appointment in 30 days; his medications were active at the time. *Id.* at 22. Plaintiff was still seen three days later by PA Negussie for a provider visit at which the physical therapy recommendation was reviewed and it was noted that Plaintiff's hand was still in a brace. *Id.* at 17. Negussie prescribed a muscle relaxer, Baclofen, and submitted a request for the eight recommended physical therapy sessions. *Id.* at 14–16, 19. The sessions were approved (*id.* at 12), however, Plaintiff failed to attend the sessions on May 2, 4, 9, and 11, 2023 (*id.* at 1–9; ECF 21-13, at 33–35). Plaintiff later attended physical therapy sessions on May 25 and 30, 2023, and June 1, 6, 8, 13, and 15, 2023. ECF 21-12, at 37; ECF 21-13, at 1–17, 21–23. On June 29, 2023, Ryan recommended four additional physical therapy sessions. ECF 21-12, at 35–36.

Plaintiff refused to attend a chronic care and medical renewal appointment on July 6, 2023. ECF 21-7, at 17. He saw Dr. Susan Arnoult for a provider visit on July 15, 2023. ECF 21-12, at 31–33. Plaintiff reported that he did not think his hand was healing correctly because he could not do pushups; he stated that he was wearing the splint and keeping his fingers flexed because it was

most comfortable. *Id.* at 31. Dr. Arnoult ordered a new x-ray of Plaintiff's hand. *Id.* at 33. The x-ray was completed July 18, 2023; the radiologist noted no new fractures and, overall, it showed a healing fracture of the base of Plaintiff's fifth metacarpal. ECF 21-7, at 25.

### C. Warden Nines' Response

Warden Nines provided a declaration attesting that he has "no personal involvement in the provision of medical care to any NBCI incarcerated individuals" and "has no authority to make decisions concerning any incarcerated individual's medical care." ECF 25-2, at ¶¶ 2, 3. Furthermore, Nines avers that he has no authority to order the contracted medical provider's staff to take any particular action concerning an incarcerated person's treatment. *Id.* at ¶ 2. An incarcerated person who is in need of medical assistance "can fill out a sick call or request that a correctional officer contact the private medical contractor." *Id.* at ¶ 4. In reviewing any complaints about medical care, Nines attests that he relies "on the reports, assessments, and judgments of the medical contractor's trained medical staff to prepare any response." *Id.* at ¶ 5.

## II. LEGAL STANDARDS

Defendants argue that the complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), or, alternatively, that summary judgment should be granted in their favor pursuant to Fed. R. Civ. P. 56. *See* ECF 13-1. A motion to dismiss styled in the alternative as a motion for summary judgment implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011), *aff'd* 684 F.3d 462 (4th Cir. 2012). Conversion of a motion to dismiss to one for summary judgment is permissible where a plaintiff has notice that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). When a movant expressly captions its motion to dismiss "in the

9

alternative" as one for summary judgment and submits matters outside the pleadings for the Court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur as the Court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261; *see also Willey v. Bd. of Educ. of St. Mary's Cnty.*, 557 F. Supp. 3d 645, 657 (D. Md. 2021) ("Notably, 'the Federal Rules do not prescribe that any particular notice be given before a Rule 12 motion is converted to a Rule 56 motion.'" (quoting *Ridgell v. Astrue*, Civ. No. DKC-10-3280, 2012 WL 707008, at *7 (D. Md. Mar. 2, 2012))).

Because Defendants filed their motions as motions to dismiss or, in the alternative, for summary judgment, Plaintiff was on notice that the Court could treat the motions as ones for summary judgment and rule on that basis. Accordingly, the Court will review Plaintiff's claims against Defendants under the Rule 56(a) standard and will consider the exhibits filed in support of Defendants' motions.

Rule 56 provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Henry v. Purnell*, 652 F.3d 524, 548 (4th Cir. 2011)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). "[I]n ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 572

U.S. 650, 651 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255) (second alteration in original). At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

The Court is mindful that Plaintiff is a self-represented litigant. A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But liberal construction does not mean that a court can "ignore an obvious failure to allege facts setting forth a plausible claim for relief." *Sheehan v. Saoud*, 650 F. App'x 143, 152 (4th Cir. 2016) (citing *Weller v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990)). A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

## III. DISCUSSION

### A. Warden Nines' Motion

Warden Nines seeks dismissal of the Complaint or summary judgment in his favor because (1) the Eleventh Amendment bars suit against Nines in his official capacity; (2) Plaintiff fails to state an Eighth Amendment claim; (3) Plaintiff fails to state a First Amendment claim for retaliation; and (4) Nines is entitled to qualified immunity. ECF 25-1.

#### 1. Eleventh Amendment

Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and departments are immune from citizen suits in federal court absent state consent or Congressional action. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Claims against state employees acting in their official capacities are also subject to Eleventh Amendment immunity because a suit against the state actor is tantamount to a suit against the state itself.

11

*Brandon v. Holt*, 469 U.S. 464, 471–72 (1985). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-204(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. Accordingly, Warden Nines is immune from suit for actions taken in his official capacity and those claims must be dismissed.

### 2. Supervisory Liability

Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Nothing in the record demonstrates that Warden Nines personally participated in the alleged denial of medical care to Plaintiff Nines also attests that he has no authority to participate in Plaintiff's medical care and no authority to dictate the medical care providers' actions. The

mere receipt or denial of Plaintiff's grievances does not alone impose liability. *Whitington v. Ortiz*, 307 F. App'x 179, 193 (10th Cir. 2009) (unpublished); *Larson v. Meek*, 240 F. App'x 777, 780 (10th Cir. 2007) (unpublished). As such, Nines is entitled to summary judgment on claims raised against him related to Plaintiff's medical care. As to Plaintiff's retaliation claims, beyond his general allegations that he wrote letters and grievances to Warden Nines, nothing in the record reflects that Nines personally took any adverse actions against Plaintiff or was aware that Plaintiff was at risk of retaliation or any other constitutional violation by any of his subordinates. Accordingly, Plaintiff's retaliation claim will be dismissed.

### B.     Medical Defendants' Motion

Medical Defendants assert that the complaint should be dismissed or summary judgment should be granted in their favor because (1) Plaintiff fails to make any allegations against YesCare; (2) Plaintiff fails to state a claim for relief; and (3) Medical Defendants were not deliberately indifferent to Plaintiff's medical needs. ECF 21-1.

As noted above, liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Other than being named in the caption of the complaint, Defendant YesCare Corp. is not mentioned anywhere in the factual allegations of the complaint and therefore must be dismissed. The Court will, however, review the merits of Plaintiff's medical care claims against Dr. Getachew and RN Swick as both are mentioned throughout the complaint.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). "Scrutiny under the Eighth

13

Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *accord Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson*, 877 F.3d at 543.

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer*, 511 U.S. at 834–37; *see also Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017); *King*, 825 F.3d at 218; *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241); *see also Scinto*, 841 F.3d at 228 (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

After a serious medical need is established, a successful Eighth Amendment claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 839–40. Under this standard, "the prison official must

14

have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" *Anderson*, 877 F.3d at 545 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter ... becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).

As a preliminary matter, the Medical Defendants do not dispute that Plaintiff's hand fracture constitutes a serious medical need. ECF 21-1, at 16. As such, the Court need only consider the subjective knowledge element of Plaintiff's Eighth Amendment claim.

A review of the record shows that none of the Medical Defendants were deliberately indifferent to Plaintiff's medical needs. Immediately following his injury, Plaintiff was evaluated. When he returned the following day complaining of pain in his hand, RN Coffman referred him to a provider and ordered an x-ray. However, due to an error in submitting the request, an x-ray was not completed until fifteen 15 days later, as opposed to the usual one week after being ordered. While the record reflects that this mistake was made by RN Coffman, nothing suggests that this was a result of her deliberate intent to harm Plaintiff or that she acted recklessly in her delay. Furthermore, the record reflects that the delay did not stunt Plaintiff's healing. At most, RN

Coffman's actions could be considered negligence, which does not amount to an Eighth Amendment violation.[5] *See Scinto*, 841 F.3d at 225 ("Deliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result."); *Russell v. Sheffer*, 528 F.2d 318, 318 (4th Cir. 1975) ("[M]istreatment or non-treatment must be capable of characterization as 'cruel and unusual punishment' in order to present a colorable claim ...").

Additionally, there is nothing in the record which shows that any Medical Defendant deliberately failed to provide Plaintiff with pain medication. Plaintiff was prescribed Tylenol with codeine by PA Negussie on January 10, 2023, in response to complaints about the pain in his hand. That prescription ran through February 6, 2023, and although it lapsed a few days prior to his appointment with Dr. Getachew on February 10, he was soon prescribed Tramadol instead to address his persistent pain. This was Dr. Getachew's only appointment with Plaintiff, at which time he reviewed the recommendations from the orthopedic consult and ensured that Plaintiff was scheduled for Epsom salt soaks to further help in relieving pain. Dr. Getachew did not act recklessly; rather, he implemented the specialist's order and responded to Plaintiff's complaints.

As a registered nurse, Swick did not have any authority to "diagnose any medical condition, order any treatment, or prescribe any medications." ECF 21-17, at ¶ 5. As such, she could not personally address Plaintiff's complaints regarding medication. Still, the record shows that she investigated his family's concerns about receiving his medication. Furthermore, to the extent Plaintiff alleges that RN Swick had his cell searched in retaliation for filing grievances and because

---

[5] As this is Plaintiff's sole allegation against the Jane/John Doe Scheduler, now identified as RN Coffman, even though she has not been served, the Complaint will be dismissed against her for failure to state a claim. Plaintiff makes no allegations showing deliberate recklessness on her part and therefore fails to establish the necessary elements for an Eighth Amendment violation.

his family called to complain about his care, nothing in record suggests that RN Swick requested, or even had the authority to request, that Plaintiff's cell be searched. Accordingly, Dr. Getachew and RN Swick are entitled to summary judgment in their favor.

### C. Motion to Appoint Counsel

Plaintiff also moves this Court for the appointment of counsel. ECF 29, at 1–2. In support thereof, he cites his indigency and the alleged fact that he is "currently on disciplinary/segregation and not able to get to the law library." *Id.* at 1. Plaintiff notes that he wants an attorney appointed "so they can help [him] [to] get a declaration from the individuals who helped [him] on this case in its earlier stages." *Id.* He also lists a number of other tasks he contends an attorney could perform including making copies and getting pictures of his injured hand. *Id.*

Appointed counsel is proper in exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). Whether exceptional circumstances exist is a fact-specific determination. *See Whisenant v. Yaum*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989). Exceptional circumstances exist where (1) "the plaintiff 'has a colorable claim'" and (2) "considering the claim's objective complexity and the plaintiff's subjective abilities, . . . the plaintiff 'lacks the capacity to present it.'" *Jenkins v. Woodard*, —— F. 4th ——, No. 22-6197, 2024 WL 3490967, at *4 (4th Cir. July 22, 2024) (quoting *Whisenant*, 739 F.2d at 162). In *Jenkins*, the Fourth Circuit recently emphasized that in determining whether exceptional circumstances warrant the appointment of counsel to a civil litigant, a district court should consider a litigant's carceral status, educational background, legal understanding, mental illness, and ability to access both legal research materials and evidence, as well as whether the case depends on the competing credibility

of witnesses, who the pro se litigant would have difficulty cross-examining without the aid of a lawyer. 2024 WL 3490967, at *4.

The Court has already determined that Plaintiff does not have a colorable claim. Even if Plaintiff did present such a claim, there are no exceptional circumstances present in this case to justify the appointment. Plaintiff has ably pleaded his case without the assistance of counsel. He makes no argument that his mental health is interfering with his ability to present his case. Though his special detention status may have made it more difficult to present his claim, he was able to cogently respond to Defendants' arguments and meet all deadlines. Moreover, Plaintiff fails to explain how the examples he provides of services counsel might offer—providing additional images of Plaintiff's injuries or procuring statements from those who assisted Plaintiff in fashioning his arguments—would have warranted a different outcome. Finally, Plaintiff has not established that this case presents competing credibility of witnesses. As such, the motion to appoint counsel is DENIED.

## IV. CONCLUSION

Warden Nines' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment is **GRANTED**. All claims against Warden Nines in his official capacity as well as Plaintiff's retaliation claim are dismissed. Summary judgment is granted in Nines' favor as to all other claims. The Medical Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment is **GRANTED**. The complaint is dismissed against YesCare Corp. and Coffman; summary judgment is granted in favor of Dr. Getachew and RN Swick. As all of Plaintiff's claims fail, his Motion to Appoint Counsel is **DENIED**. A separate Order follows.

August 29, 2024  
Date

/s/  
Brendan A. Hurson  
United States District Judge